UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JACQUAN MARQUIS HARVARD,

      Plaintiff,

v.                            Case No. 3:12cv289/LC/CJK

JOHN BEAUDRY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case, brought under 42 U.S.C. § 1983, is before the court on defendant's motion for summary judgment (doc. 55), to which plaintiff has responded in opposition (doc. 62). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(c). After careful consideration, the undersigned concludes that the motion should be granted.

## BACKGROUND

Plaintiff, an inmate of the Florida Department of Corrections ("DOC") proceeding *pro se* and *in forma pauperis*, was confined at the Santa Rosa Correctional Institution ("Santa Rosa CI") during the events set out in the complaint. Pending before the court is plaintiff's second amended complaint (doc. 29), in which plaintiff claims that the sole defendant, Santa Rosa CI Corrections

Officer John Beaudry, violated plaintiff's Eighth Amendment rights by using excessive force.  (Doc. 29, p. 5).   As recompense for this alleged constitutional violation, plaintiff seeks $65,000 in compensatory damages, $65,000 in punitive damages, $65,000 in damages for "emotional injury and distress," costs of the suit, and any further relief the court deems proper.   (Doc. 29, p. 10).   Defendant Beaudry argues that he utilized an appropriate amount of force as necessitated by plaintiff's disorderly conduct, and that plaintiff fractured his own arm after the altercation underlying the complaint occurred.  (Doc. 55).   Defendant Beaudry, therefore, contends he did not commit an Eighth Amendment violation and plaintiff is not eligible to recover the relief he seeks.

Taking plaintiff's version of events first, the complaint alleges that defendant Beaudry broke plaintiff's arm during a use of force incident which occurred on the evening of March 15, 2012.   Plaintiff claims that, while being escorted to his cell in the Santa Rosa CI main unit by defendant Beaudry and Santa Rosa CI Officer Jacob Denmon, Beaudry threatened to harm plaintiff "out of reprisal for the plaintiff writing grievances on [defendant Beaudry]."  (Doc. 29, p. 5).  Plaintiff further alleges that after entering the cell, Beaudry removed plaintiff's left wrist restraint and then pulled plaintiff's right arm "through the handcuff portal up to the plaintiff [sic] right shoulder."[1]   (Doc. 29, p. 5).   Plaintiff alleges that Beaudry "continuously pulled, twisted, and bent" the plaintiff's right arm with the sole intent of causing physical harm.  (Doc. 29, p. 5).  In response, plaintiff cried out in pain and asked defendant Beaudry to "please stop."   According to the

---

[1] The handcuff portal is a small opening on the cell doors in the Santa Rosa CI dorm where plaintiff was housed.  By utilizing the handcuff portal, corrections officers can remove inmates' wrist restraints after the inmates are secured in their cells.  (Exhibit E).

complaint, defendant Beaudry "continued his physical brutality" until other inmates became irate and yelled for the abuse to cease.

Following this incident, Santa Rosa CI Lieutenant Johnson and Sergeant Steene came to plaintiff's cell with a handheld video camera.  Plaintiff advised them that he wanted to be seen by medical staff and that he was experiencing "extraordinary pain in his right arm."  Plaintiff was then restrained and escorted to a medical examination room.  (Doc. 29, pp. 5-6).  Katrina Currie, a contract nurse at Santa Rosa CI, examined plaintiff.  Plaintiff advised Currie "what transpired, his inability to use his right arm properly, and how much pain he . . . was sustaining." (Doc. 29, p. 6).  Plaintiff claims Nurse Currie told him that his arm was "just bruised" and sent him back to his cell with ibuprofen.  Plaintiff next alleges that Santa Rosa CI Officers Given and Brady brought witness statement forms to his cell so that he could document the alleged abuse, but that neither gave plaintiff an opportunity to complete the form.  Plaintiff again suggests defendant Beaudry was motivated by the number of grievances plaintiff had written against Beaudry.  In support of this claim, plaintiff pleads that at 11:15 p.m. that evening, Beaudry asked, "Harvard, are you done writing that grievance yet? I told you I would get you!"  (Doc. 29, p. 6).

That following morning, on March 16, 2012, plaintiff cut himself in what he characterizes as an attempt to commit suicide "out of fear and from mental torment of Officer J. Beaudry."  (Doc. 29, p. 6).  Plaintiff was again removed from his cell and assessed by medical staff.  Plaintiff advised the treating nurse he feared for safety because of defendant Beaudry and wanted to commit suicide.  The nurse advised plaintiff that a mental health referral would be filed, treated plaintiff's

lacerations, and had plaintiff placed back in his cell.  Plaintiff claims that his fear of defendant Beaudry and the mental pain Beaudry inflicted upon him led him to another suicide attempt later that morning.  Soon thereafter, medical staff assessed plaintiff and treated his wounds.  (Doc. 29, p. 6).

At 2:00 p.m. on March 16, Advanced Registered Nurse Practitioner ("ARNP") Nichols examined plaintiff's right arm.  Plaintiff claims Nichols stated that plaintiff's right arm appeared to be broken, that plaintiff would be scheduled for an X-Ray, and said a splint would be placed on plaintiff's right arm.  (Doc. 29, p. 6).  The  X-ray Nichols scheduled was ultimately taken on March 21, 2012, and revealed a fracture.  (Doc. 29, p. 8).

Later, plaintiff received a disciplinary report from defendant Beaudry on March 22.   According to plaintiff's complaint, Beaudry's report charged that "plaintiff pulled the keys and his . . . arm into [plaintiff's] then assigned cell." (Doc. 29, p. 8).  According to plaintiff, Beaudry's discipline report was initially affirmed but was later rejected on appeal "due to procedural/technical error." (Doc. 29, p. 9).  Plaintiff claims his grievance filed against defendant Beaudry was later "approved."  (Doc. 29, p. 9).  On April 3, 2012, plaintiff received another x-ray of his right arm.   Plaintiff states that "orthopedic Dr. EsQuivia-Munez" determined plaintiff sustained a hair-line fracture in plaintiff's right arm and ordered a splint remain on the arm for six weeks.[2]  (Doc. 29, p. 8).

---

[2] In her medical report, Dr. EsQuivia-Munez notes that plaintiff "sustained" a displaced fracture of his right arm as result of a "twisting injury."  (Doc. 62-1, p. 29).  Dr. EsQuivia-Munez, however, was merely recording plaintiff's own version of events concerning how plaintiff was injured.  Nothing in Dr. EsQuivia-Munez's medical report indicates she was making substantive medical findings regarding how plaintiff injured his right arm.  No evidence at all suggests that plaintiff had a displaced fracture.

MOTION FOR SUMMARY JUDGMENT

Based upon video and medical evidence,[3] defendant Beaudry now moves for summary judgment on the merits.  (Doc. 55).  The video evidence, made by in place surveillance cameras which recorded the incident of which plaintiff complains, shows defendant Beaudry and fellow Santa Rosa CI Officer Jacob Denmon escorting plaintiff to his assigned cell in a Santa Rosa CI dormitory. (Exhibit E).  Officers Beaudry and Denmon state that plaintiff was returning from a medical evaluation following a self harm incident.  (Doc. 55-3, p. 1; Doc. 55-4, p. 1).  According to defendant's motion for summary judgment and ratified by the video, after plaintiff was placed inside the cell, Beaudry opened the handcuff portal on the cell door so plaintiff could extend his hands through the portal and have his handcuffs removed.  (Doc. 55-3, p. 1; Exhibit E).  Defendant Beaudry and plaintiff agree that plaintiff extended his hands through the portal and Beaudry removed plaintiff's left wrist restraint.  (Doc 55-3, p. 1; Doc. 29, p. 5).  Defendant Beaudry says, however, that after he removed plaintiff's left wrist restraint, the procedure was violently interrupted when plaintiff turned around and pulled Beaudry's arms into the cell along with Beaudry's handcuff keys and handcuffs.  (Doc. 55-3, p. 1). Defendant Beaudry states plaintiff ignored multiple orders to bring his hands back through the handcuff portal and stop resisting.  (Doc. 55-3, p. 1).  Indeed, the video shows Beaudry leveraging himself against plaintiff's cell door with his arms extended through the handcuff portal into plaintiff's cell, while Beaudry

---

[3] Exhibit E, attached to defendant's motion for summary judgment, (doc. 65), consists of video footage of the use of force incident on March 15, 2012.  Plaintiff acknowledged having the opportunity to fully review–and having actually reviewed–the disc containing the footage.  (Doc. 63-2, p. 1).

maintained his grip on plaintiff's arm.  (Doc. 55-3, p. 1; Exhibit E).  The video does not show plaintiff's arm or arms pulled through the portal, up to this point in time.

Beaudry acknowledges then using spontaneous physical force to pull plaintiff's arms back through the handcuff portal after it became clear plaintiff would not comply with his lawful orders.  (Doc. 55-3, p. 2).  Beaudry, who found himself with his arms actually inside the cell, via the portal, states that he sought to prevent plaintiff from gaining possession of the handcuffs and handcuff keys.  As a trained corrections officer, Beaudry claims he recognized the threat posed by an inmate with control of those items and the danger to overall jail function.  (Doc. 55-3, p. 2).  Beaudry also states the threat in this incident was heightened by the fact that plaintiff, a Close Management inmate, had an "extensive history of self-injurious behavior" and could have used either the handcuff key or the handcuffs "to inflict serious damage upon himself."   (Doc. 55-3, p. 2).

Officer Denmon, seen on video walking away from the cell after plaintiff entered, returned shortly thereafter in response to the commotion he heard coming from the direction of plaintiff's cell.  (Doc. 55-4, p. 1; Exhibit E).  According to Denmon's declaration, Beaudry struggled with plaintiff and ordered plaintiff to bring his hands back through the handcuff portal so the restraints could be removed.  After Beaudry pulled plaintiff's arms back through the handcuff portal, Denmon assisted Beaudry by pinning plaintiff's right arm to the handcuff portal so the handcuff could be removed from plaintiff's right wrist.  (Doc. 55-4, pp. 1-2).  With plaintiff's arms pinned to the handcuff portal, both defendant Beaudry and Denmon realized that Beaudry's handcuff key had broken during the struggle.

Beaudry used Denmon's key to remove the handcuff from plaintiff's right wrist. (Doc. 55-3, p. 2; Doc. 55-4, p. 2).

Although defendant Beaudry admits an altercation, as described, he denies plaintiff's claim that plaintiff's right arm was fractured during the incident. (Doc. 55, p. 11). The only medical evidence from the incident, an examination by Nurse Currie taken shortly after the altercation, documented only minor injuries on plaintiff's right arm. (Doc. 55-6, p. 1). Notably, Currie detected no other injuries and plaintiff voiced no other complaints.[4] (Doc. 55-6, p. 3). Plaintiff's medical records were later examined by Dr. Long Ngoc Do, Director of Medical Services for the Florida DOC, who concluded that the fracture was inconsistent with plaintiff's arm having been "twisted, bent, or pulled through the handcuffing portal." (Doc. 55-9, p. 2). The video, viewed several times by the undersigned, does not show plaintiff's arms pulled outside the portal (other than having the left cuff removed), until after Beaudry's arms had been pulled in. No one except plaintiff was on the inside of the cell at that time.

Later that night, after Nurse Currie examined plaintiff, Santa Rosa CI Officer Joshua Chandler reported observing plaintiff repeatedly slamming his right forearm against the edge of his metal bunk. (Doc. 55-5, p. 3). Chandler also recorded that plaintiff boasted "he would have [defendant's] job in the morning." (Doc. 55-5, p. 1). Chandler reported plaintiff's conduct to Sergeant Steene, who later informed Nurse Currie of Chandler's observation. (Doc. 55-6, p. 2). Nurse Currie noted plaintiff's behavior in the medical record and observed that the right

---

[4] Importantly, in his deposition, plaintiff agreed that Nurse Currie "accurately reflected what [plaintiff] said that day" and "did not diagnose [plaintiff] as having a broken arm." (Doc. 55-7, p. 12).

arm plaintiff was hitting against the metal bunk was the same arm plaintiff complained about during his earlier examination, and, of course, the arm plaintiff claims was earlier broken by Beaudry.  (Doc. 55-6, p. 5).  The medical expert, Dr. Ngoc Do, later determined that plaintiff's fracture was consistent with the plaintiff "having hit his right arm on a steel bunk."  (Doc. 55-9, p. 2).  Thus, defendant asserts that the fracture in plaintiff's right arm stems from plaintiff's hitting his forearm against the metal bunk and not from the use of force incident.  (Doc. 55-5, p. 5; Doc. 55-9, p. 2 ).

Based upon the foregoing, Beaudry says the only reliable facts in this case show plaintiff sustained no more than *de minimis* injury as a result of the use of force incident, and not a fracture.  Beaudry further advances that any injury plaintiff did sustain was justified considering the risks plaintiff posed to his own safety, the safety of the defendant and his fellow correctional officers, and the security of the prison dorm.  (Doc. 55, p. 10).

## PLAINTIFF'S UNSWORN RESPONSE

In his unsworn response to defendant's motion for summary judgment, plaintiff disputes the allegation that he turned around and pulled Beaudry's arms into the cell.  (Doc. 62, p. 2).  Plaintiff states that Beaudry "pull[ed], twist[ed], and bent" his arm through the handcuff portal before he could turn around.  (Doc. 62, p. 2).  Plaintiff further contends that the "structure and build" of the cell, along with his "height and overall stature," made it impossible for plaintiff to assume the posture Beaudry claims.  (Doc. 62, p. 2).  Plaintiff also notes the absence of a disciplinary report in his file mentioning a broken handcuff key and denies attempting to gain possession of the keys or handcuffs.  (Doc. 62).  Finally,

plaintiff maintains that if Officer Chandler's report that he was slamming his arm against a metal bunk was true, Chandler would have had a duty to contact medical personnel and prevent plaintiff from inflicting additional harm upon himself. (Doc. 62, pp. 3-4).  Notably, plaintiff does not just come out and say the arm banging incident did not happen.

To support his claims, plaintiff submits affidavits from fellow inmates Brandon Evans (doc. 62-1, p. 1), Douglas Schiek (doc. 70, p. 5), and Kevirent Brandabe (doc. 70, p. 7).[5]  All three inmates allege that defendant Beaudry pulled and twisted plaintiff's right arm until they heard a noise that sounded like a "pop" or a "bone being cracked."  (Doc. 62-1, p. 1; Doc. 70, pp. 5, 7).  Brandabe and Schiek declare that plaintiff caused no disturbance and made no attempt to resist Beaudry.  According to their affidavits, the defendant continued to apply excessive physical force even after plaintiff communicated his pain and pleaded with defendant to stop.[6]  (Doc. 70, pp. 5, 7).

## ANALYSIS

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he plain language of Rule 56(a) mandates the

---

[5] Plaintiff also submitted general affidavits from inmates Donte Peterson and Anthony Campbell.  The affidavits contain hearsay statements made by third party correctional officers regarding defendant Beaudry's conduct toward plaintiff.  The statements offer little bearing on the incident in question and are inconsistent with the objective medical evidence of record in the case. Most importantly, the Peterson and Campbell affidavits do not expressly or implicitly dispute the video evidence that plaintiff initiated the altercation by pulling Beaudry's arms into the cell.

[6] The court notes that plaintiff presented a legible and well-plead complaint and response, and represented himself well at the summary judgment hearing.

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to  make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party.  *Id.*  Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact."  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).  When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).  A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not

significantly probative.'"  *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011).

<u>Eighth Amendment Claim</u>

As to the plaintiff's chief claim concerning defendant Beaudry's use of excessive force in violation of the Eighth Amendment, to make a viable Eighth Amendment claim under § 1983, plaintiff must establish two essential elements:

> 1.   the conduct complained of was committed by a person acting under color of state law; and

> 2.   this conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 1912, 68 L. Ed. 2d 420, 428 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).  "To show a violation of [his] Eighth Amendment rights, Plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1319 (11th Cir. 2005 (quotation omitted).  "To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 1319-20 (quotations omitted).  Simple negligence is not actionable under § 1983, and a plaintiff must allege "a conscious or callous indifference to a prisoner's rights."

*Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982). Prison officials may avoid Eighth Amendment liability by, inter alia, showing: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1982-83, 128 L. Ed. 2d 56 (1994).'

 "The Eighth Amendment's proscription of cruel and unusual punishment . . . governs prison officials' use of force against convicted inmates." *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). "[I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." *Whitley v. Albers*, 475 U.S. 312, 320, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986). Thus, "[w]here a prison security measure is undertaken to resolve a disturbance, . . . that indisputably poses significant risks to the safety of inmates and prison staff, . . . the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id*. at 320-21, 106 S. Ct. at 1085 (internal quotation marks omitted).

The Supreme Court also articulated this standard for determining whether prison officials are entitled to judgment as a matter of law on an excessive force claim:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.  Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

*Id*. at 322, 106 S. Ct. at 1085.  As the Eleventh Circuit has recognized, the Supreme Court outlined five factors relevant to ascertaining whether force was used "maliciously and sadistically for the very purpose of causing harm":  (1) the extent of the injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.  *Campbell*, 169 F.3d at 1375 (citing *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085); *see also Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (applying the same five factor test set forth in *Whitley* ).

Here, none of the aforementioned factors support a finding that Officer Beaudry wantonly inflicted pain on plaintiff.  Although plaintiff claims Beaudry "continuously pulled, twisted, and bent the plaintiff [sic] right arm" through the handcuff portal (doc. 29, p. 5), the undisputed video evidence, carefully reviewed by the undersigned, shows defendant Beaudry's arms extended through the

handcuff portal into plaintiff's cell.  (Doc. 55-4, p. 1; Doc. 55-3, pp. 1-2; Exhibit E).  Notably, plaintiff offers no explanation for the video evidence showing defendant Beaudry's arms extended into plaintiff's cell through the handcuff portal, a fact which is not reconcilable with plaintiff's characterization of events.

Considering the second and third *Whitley* factors, addressing the need for and related application of force, plaintiff's conduct necessitated that Beaudry prevent plaintiff from gaining control of objects he may have used to harm himself or threaten institutional security.  (Doc. 55-3, p. 2; Doc. 55-4, p. 2; Exhibit E).  Similarly, the fifth factor, the extent of the threat posed, also supports defendant's conduct.  Plaintiff was a Close Management inmate who had just returned from a medical evaluation following a self-harm incident and could have utilized the keys to again inflict harm upon himself or others.  (Doc. 55-3, p. 1; Doc. 55-4, p. 1).  Accordingly, Beaudry, upon finding his arms pulled into the cell, and realizing he had lost control of the handcuff key, reasonably perceived a threat and used force to pull plaintiff's wrist and forearms out of the cell through the handcuff portal.  Beaudry and Denmon then continued to apply force in order to remove the remaining handcuff from plaintiff's right wrist and regain control of the handcuff key.

Turning to the first and fourth *Whitley* factors, which concern the extent of injury and efforts to mitigate the severity of the use of force, the medical records of the case further affirm defendant Beaudry's characterization of events.  Immediately after the use of force incident, Nurse Currie examined plaintiff.  (Doc. 55-6, p. 1).  Currie reports that during the examination plaintiff "stated that his

right shoulder and forearm were sore." Currie also noted "a knot on the knuckle of [plaintiff's] right index finger, slightly swollen fingers on his right hand, a scratch on the back of his right arm, and . . . that [plaintiff's] right arm was warm." (Doc. 55-6, pp. 1, 3-4). Currie detected no other injuries and plaintiff voiced no other complaints.[7]

Approximately two hours later, at 9:00 p.m., Santa Rosa CI Officer Chandler witnessed plaintiff repeatedly slamming his right forearm against the edge of his metal bunk. (Doc. 55-5, pp. 1, 3). Chandler reported hearing plaintiff boast "he would have Office Beaudry's job in the morning." Plaintiff does not simply deny this incident. During the night and into the morning of March 16, plaintiff reports twice attempting suicide. (Doc. 29, p. 6). Following these incidents, plaintiff was examined by ARNP Nichols. Nichols ordered a splint and ACE wrap for the arm and she also scheduled an X-ray. (Doc. 55-9, p. 8). The x-ray, taken on March 21, revealed a non-displaced hairline fracture of plaintiff's right ulna.

Supporting Chandler's observations and defendant's characterization of events, Dr. Ngoc Do determined plaintiff's fracture was consistent with plaintiff "having hit his right arm on a steel bunk." (Doc. 55-9, p. 2). Contrary to plaintiff's assertions, Dr. Ngoc Do concluded that the injury was inconsistent with plaintiff's arm having been "twisted, bent, or pulled through the handcuffing

---

[7] Having observed plaintiff's intelligent presentation in court, the undersigned finds it highly unlikely that plaintiff would not have communicated additional complaints if plaintiff's injuries were indeed more significant at the time of Nurse Currie's examination. Again, in his deposition, plaintiff agreed that Nurse Currie "accurately reflected what [plaintiff] said that day" and "did not diagnose [plaintiff] as having a broken arm." (Doc. 55-7, p. 12).

portal." (Doc. 55-9, p. 2). Although plaintiff asserts that Dr. Ngoc Do provided only an "opinion," (doc. 62, p. 8), Dr. Ngoc Do's medical assessment is unrefuted in the record and is not contradicted by any other medical evidence of record.

In opposition to defendant's motion for summary judgment, plaintiff submits declarations from Santa Rosa CI inmates Douglas Schiek, Kevirent Brandabe, and Brandon Evans. (Doc. 70, pp. 5, 7; Doc. 62-1, p. 3). Schiek and Brandabe's declarations posit that plaintiff did not cause a disturbance or attempt to resist Beaudry. All three declarations, however, are uncannily similar and consist of conclusory legal statements and unsupported assertions with no probative value.[8] Moreover, Evans, Schiek, and Brandabe's descriptions of events are inconsistent with the objective video evidence. From outside of plaintiff's cell, the part of the incident most visible is defendant Beaudry's position, in which his arms are clearly extended through the handcuff portal into plaintiff's cell. (Doc. 55-4, pp. 1-2; Exhibit E). The inmates, however, provide no explanation for why Beaudry would assume such a position in the absence of a disturbance from plaintiff. None of their declarations refute defendant Beaudry's contention that he maintained his grip

---

[8] Further, the affidavits describe the incident with oddly grandiose language. Brandabe, for instance, states that plaintiff "[m]oaned [a]nd [g]roan [sic] in [p]ain begging [a]nd [p]leading for officer Beaudry [t]o [s]top his [n]egligent physical '[a]busive' [m]isconduct." (Doc. 70, p. 7). Schiek states that he heard plaintiff "screaming out in pain telling [defendant Beaudry] he was hurting." (Doc. 70, p. 5). Evans allegedly "witnessed [plaintiff] get battered" by defendant Beaudry, whose acts "were malicious and purposeful." "While [defendant Beaudry] was in the process of pulling [plaintiff's] wrist," Evans states that he observed Beaudry "pull, bend, and twist [plaintiff's] right arm with great intentions of causing great harm." Evans states that "all of the abuse was done sadistically and maliciously." (Doc. 62-1, p. 3).

and applied force to prevent plaintiff from gaining possession of handcuffs and handcuff keys.

Further undermining these declarations, Schiek, Brandabe, and Evans dramatically report hearing the sound of a bone "cracki[ng]" or "pop[ping]." (Doc. 70, pp. 5, 7; doc. 62-1, p. 3). Nurse Currie's examination, however, neither recorded an injury consistent with such a noise nor indicated that plaintiff complained of such an injury or its symptoms. Further, Dr. Ngoc Do's medical assessment concluded that it would be "impossible that the non-displaced fracture . . . would cause any noise that can be heard from any distance." (Doc. 55-9, p. 2). In sum, the reasonable factual assertions from Evans, Schiek, and Brandabe, even if taken as true, cannot bring the clear import of the undisputed video and medical evidence into doubt.[9] *See generally Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) ("Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion."); *Cordoba v. Dillards*, 419 F.3d 1169, 1181 (11th Cir. 2005) (holding that "'unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion'" (*quoting Hedberg v. Ind. Bell Telephone Co., Inc.*, 47 F.3d 928, 931-32 (7th Cir. 1995))).

---

[9] Given the layout of the Santa Rosa CI dormitory where plaintiff was housed, the small windows on the cell doors, and Beaudry's position in front of the cell interfering with the inmates' sight during the use of force incident, the undersigned has great difficulty even imagining that other inmates had a clear view (if any view) of the incident and of plaintiff's conduct inside his cell. Nevertheless, the court views all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party.

Plaintiff also argues that the lack of a disciplinary report documenting a broken handcuff key discredits the defendant's assertions.  (Doc. 62, p. 3).  As plaintiff acknowledges, however, that very disciplinary report was rejected "due to procedural/technical" error.  (Doc. 29, p. 9).  Defendant states that this error stemmed from his failure to include a date in the report's statement of facts.  (Doc. 46, p. 4).  Even assuming, without requiring proof, that the handcuff key did not break, such would not diminish the force of the video evidence depicting the defendant's arms being pulled into the cell.

Finally, plaintiff disputes the contention that Officer Chandler observed plaintiff repeatedly slamming his right arm against a metal bunk.   Plaintiff maintains, without ever denying that the incident occurred, that if Chandler made such an observation, Chandler would have had a duty to contact medical staff and have the plaintiff evaluated for bizarre behavior.  (Doc. 62, pp. 3-4).  Sergeant Steene, however, reported Chandler's observation to Nurse Currie at approximately 9:52 p.m.  (Doc. 55-6, p. 2).  Nurse Currie noted plaintiff's behavior in his medical record and observed that the right arm was the same arm plaintiff complained about during his earlier examination.  (Doc. 55-6, p. 5).

Because plaintiff's claims are directly and firmly contradicted by the objective evidence of record and the defendant's arguments supported by such evidence,  the undersigned finds summary judgment for the defendant appropriate in this instance.  The only reliable evidence demonstrates plaintiff's fracture could not have occurred as plaintiff claims.  After the use of force incident, plaintiff voiced no complaints, and now points to no medical findings, consistent with a

broken arm.   No mistake should be made concerning the facts here.   Plaintiff's entire case depends upon a showing that Beaudry was an unjustified aggressor whose unprovoked act caused plaintiff's broken arm.   No reasonable jury could base a verdict upon plaintiff's claims concerning either the chronology or severity of Beaudry's actions.    Accordingly, plaintiff has not established an Eighth Amendment violation.

Compensatory and Punitive Damages

As a result of the foregoing determinations, plaintiff's compensatory and punitive damages claims are barred by statute.   The Prison Litigation Reform Act ("PLRA") provides, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."   42 U.S.C. § 1997e(e).   "[T]he phrase 'Federal civil action' means all federal claims, including constitutional claims."   *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir. 2002).   This action, brought by plaintiff under 42 U.S.C. § 1983, is a "Federal civil action" under this definition.    Evident from the face of plaintiff's complaint, plaintiff was a prisoner at the time he filed this action.

Nurse Currie's medical evaluation shows plaintiff had a sore right shoulder and forearm, a knot on the knuckle of his right index finger, swollen fingers on his right hand, a scratch on the back of his right arm, and his right arm was warm. (Doc. 55-6).   The evidence conclusively shows plaintiff suffered no fractured arm as a result of the incident he complains of.    Thus, even construed liberally, plaintiff's allegations fail to show he suffered more than a *de minimis* physical

injury as a result of Officer Beaudry's use of force.  *See, e.g., Johnson v. Moody*, 206 F. App'x 880, 885 (11th Cir. 2006) (concluding that injury to prisoner's finger sustained after metal tray door was forcibly closed on his hand was *de minimis*, where injury merely required a tetanus shot, bandages, and non-prescription pain relievers).  As plaintiff's allegations do not reasonably support an inference that plaintiff suffered more than a *de minimis* physical injury, the PLRA prohibits plaintiff from bringing his compensatory and punitive damages claims.  *See, e.g., Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (finding that prisoner who suffered the discomfort of pepper spray had shown only *de minimis* injury, insufficient to satisfy § 1997e(e)); *Palmer v. Walker*, No. 2:09cv401, 2011 WL 836928, at *8 (M.D. Fla. Mar. 9, 2011) (finding that prisoner who suffered temporary eye irritation as the result of application of chemical agents failed to show more than a *de minimis* physical injury under § 1997e(e)); *Harris v. Garner*, 190 F.3d 1279, 1287-88 (11th Cir. 1999) ("*Harris I*"), *vacated in part and reinstated in part on reh'g*, 216 F.3d 970 (11th Cir. 2000) (en banc) ("*Harris II*") (affirming district court's dismissal, under 42 U.S.C. § 1997e(e), of prisoners' compensatory and punitive damages claims arising from prison officials' alleged unconstitutional conduct, where prisoners alleged no physical injury arising from that conduct); *Al-Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011) (holding that "the overall tenor of *Harris* and its progeny, when taken together, unmistakably supports" the conclusion that § 1997e(e) applies to constitutional claims and precludes the recovery of compensatory and punitive damages in the absence of the requisite physical injury).

## MOTION FOR SANCTIONS

The defense objects to the authenticity of Brandon Evan's affidavit and has filed a motion for sanctions.  (Doc. 65).  In the motion, the defense expressly moves for dismissal.  The defense, however, has not met its burden in showing that plaintiff submitted a false affidavit.  Given the court's conclusions in this Report and Recommendation and grant of summary judgment for the defendant, the court will deny the motion for sanctions as moot.

Accordingly, it is respectfully RECOMMENDED:

1.   That the defendant's motion for summary judgment (doc. 55) be granted and that the Clerk of Court be directed to enter final summary judgment in favor of the defendant, consistent with this order.

2.   That the defendant's motion for sanctions (doc. 65) be DENIED as MOOT.

3.   That all pending motions be DENIED as MOOT.

4.   That the Clerk be directed to close the file.

At Pensacola, Florida, this 12th day of August, 2014.


/s/ *Charles J. Kahn, Jr.*

CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

Case No. 3:12cv289/LC/CJK

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).